UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONI JOHNSON,

    Plaintiff,                               Case No. 09-cv-11003

v.                                         HONORABLE STEPHEN J. MURPHY, III

HENRY FORD HEALTH SYSTEM,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT** (docket no. 16)

Plaintiff Toni Johnson has sued Defendant Henry Ford Health System ("Henry Ford") for wrongful termination of employment under federal and state statutes, as well as for violation of her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*. Johnson claims Henry Ford discriminated against her, eventually firing her, because she was pregnant. Henry Ford argues Johnson was fired because she falsified her employment application, the punishment for which is immediate termination. Johnson also claims Henry Ford interfered with her FMLA rights and eventually retaliated against her for asserting her rights. Henry Ford denies these claims as well. Discovery in this case has closed and Henry Ford moved for summary judgment on all counts. For the reasons stated below, the Court will grant summary judgment in favor of Henry Ford.

**FACTS**

The facts in the case are undisputed unless otherwise noted. The case begins with two employment applications Johnson submitted; one in 1999 and one in 2005. On June 15, 1999, Johnson completed and signed an employment application with the Henry Ford Wyandotte Hospital ("HF Wyandotte"). Johnson dep. p. 34; 1999 application, Def Mot. Ex.

B. Johnson indicated on the application that she preferred to work at HF Wyandotte, but also marked "yes" after the question "May we refer your application to other HFHS Facilities?" "HFHS" refers to Henry Ford Health System. Johnson checked the boxes for "Henry Ford Hospital," "Henry Ford Medical Group," and "Henry Ford Wyandotte Hospital" under the heading, "Business Units (check all of interest)." Johnson testified that by checking the boxes, she understood those were places where should could become employed as a result of completing the single application. Johnson dep. p. 36.

In the heading of the 1999 application, the words "Henry Ford Health System" appeared in a logo next to the words "Henry Ford Wyandotte Hospital." The application also asked "How were you referred to HFHS?" She responded by writing "Ad." The same day she completed the application, Johnson also signed a "Memorandum of Understanding" authorizing the investigation of her past employment. Def. Mot. Ex. C. The Memorandum also contained the same "Henry Ford Health System" logo in the heading. *Id.* The term "Henry Ford Wyandotte Hospital" did not appear once in the Memorandum and any reference to "Henry Ford" in the Memorandum was a reference to "Henry Ford Health System."

On June 28, 1999, after Johnston had been hired as a student X-ray Technician, she completed a "New Hire Data Sheet" listing her personal information as well as an emergency contact. Def. Mot. Ex. E. This document also contained the same "Henry Ford Health System" logo that appeared on the Application and Memorandum of Understanding.

On July 15, 1999, Johnson was fired for poor attendance and because, on her final day of work, she did not call and did not report to work. Letter of July 19, 1999, Def. Mot. Ex. F.

More than six years later, on August 17, 2005, Johnson completed and signed an

employment application with Defendant Henry Ford. 2005 Application, Def. Mot. Ex. G. The application's heading contained the same logo with the words "Henry Ford Health System" that appeared on the HF Wyandotte application and the Memorandum of Understanding she signed in 1999. Johnson testified that she knew that her failure to provide truthful information on the form could subject her to discipline or termination if and when she were hired. Johnson dep. p. 63. The application asked, "Have you ever worked at Henry Ford Health System?" Johnson checked the box indicating "No." The section titled "Employment History" instructed the applicant to "List all employers" and did not qualify the instruction in any way, implying that *all* employers were to be listed, no matter how remote the employment. Johnson did not list HF Wyandotte as a former employer despite her brief period of employment there in 1999.

Henry Ford hired Johnson in September 2005 as a CT Technician / Radiographer assigned to the Radiology Department at Henry Ford Hospital Emergency Room. Johnson was expected to work five consecutive 12-hour shifts from 7:00 pm to 7:00 am, followed by a five-day break. Johnson dep. p. 68. Johnson also voluntarily worked overtime when available. *Id.* pp. 69-70.

In May 2007, prompted by Johnson's frequent absences from work (13 days in a single month, four of which were consecutive), her immediate supervisor, Cliff Cavender, called Johnson at home to find out if she was okay and if she needed an extended period of leave. Cavender dep. pp. 34, 66. At that time, Johnson and Cavender discussed Johnson's frequent absence at work and Johnson told Cavender she was pregnant. *Id.* p. 67. Cavender immediately suggested that Johnson apply for FMLA leave. *Id.* pp. 67-68.

Soon after the conversation with Cavender, Johnson submitted a request for FMLA leave. She completed a leave request form and submitted it along with an FMLA

"Certification of Health Care Provider" completed by her physician. Def. Mot. Ex. J. Her physician indicated the duration of Johnson's "condition" and probable date of her "incapacity" was from May 18, 2007 to June 6, 2007. She would be evaluated on a weekly basis for further recommendations. Her physician also noted that it would be necessary for Johnson to work only intermittently from May 18, 2007 until six weeks postpartum. *Id.*

On June 6, 2007, Johnson submitted a second "Certification of Health Care Provider" completed by her physician, which extended the duration of incapacity under her initial request to June 19, 2007, but indicated "N/A" to the question of whether Johnson would require intermittent work only. Around June 25, 2007, Johnson's physician completed and submitted a "Return to Work / School Letter" noting that Johnson could return to work on June 25, 2007, but was prohibited from lifting in excess of 25 pounds until December 12, 2007. Def. Mot. Ex. L. This was the only restriction on her return to work. *Id.*; Johnson dep. p. 135.

Plaintiff testified that she believes she may have submitted a second request for FMLA leave, but cannot recall for certain whether she ever actually did so. She also does not recall how much time she requested, what her physician told her about the second request, or whether she ever formally submitted a second request. Johnson dep. pp. 126-29. Johnson testified that she sent Cavender an email about a request, but was apparently told she could not take leave because she had not completed new paperwork for the request. Johnson has produced no documentation about a second request for FMLA leave. *Id.* at 129.

After returning to work on June 25, 2007, Johnson made a request to a clinical supervisor for shorter shifts or less work days per week. Johnson dep. p. 142; Cavender Dep. p. 52. There is no evidence of a medical or pregnancy-related basis for Johnson's

4

request for shorter hours or less days, and Johnson admits that the only medical restriction required by her physician when she returned was a weight lifting restriction. Johnson dep. p. 135. Cavender sought to modify Johnson's schedule, but was unable to do so because of staffing needs and patient care demands. Cavender dep. p. 52. Shift assignments were made on the basis of seniority of the different CT Technicians. Johnson dep. p. 92. Johnson testified that of the approximately ten other CT Technicians that worked in her area, Johnson ranked third or fourth from the bottom in terms of seniority. *Id.* p. 117.

Johnson also had requested, in response to an email to all the CT Technicians regarding the open position, that she be transferred to the Henry Ford West Bloomfield Clinic and assume her same position. She requested the position because it would reduce the number of consecutive days she would have to work, albeit reducing her overall weekly hours. Johnson dep. p. 108. Cavender responded to Johnson's request stating that he was unable to place her at the West Bloomfield Clinic due to her restriction on lifting anything over 25 pounds, which prohibited her from working alone. Def. Mot. Ex. N. The West Bloomfield position required the CT Technician to work alone. *Id.*

Johnson disputes Cavender's reason for denying her the position, instead claiming that Cavender wanted to keep Johnson in her position in the Henry Ford Hospital Emergency Room because there was no one else to train newly-hired CT Technicians. Johnson dep. p. 112. Despite claiming in her deposition that she requested fewer hours and days because of her pregnancy, Johnson repeatedly requested overtime and admitted that she requested and was granted overtime on various occasions. *Id.* pp. 163-65.

In late August 2007, Johnson contacted Employee Services to discuss the problems she was having with Cavender in not scheduling her for shorter shifts and for not transferring her to the West Bloomfield Clinic. Johnson dep. p. 90; Saoud dep. p. 32.

5

Johnson's complaint was routed to Kathy Saoud, Senior Employee Relations Representative, who called Johnson a couple of times in September and left messages. Saoud dep. p. 33.  When Saoud finally spoke with Johnson, Johnson indicated that she was not being treated fairly, that she had weight and hour restrictions, and that her supervisor was aware of the restrictions but refused to accommodate her. *Id.* p. 34.  Saoud offered to set up at meeting with Johnson, Cavender, and Saoud to discuss the matter further. *Id.* p. 35.  After speaking with Johnson, Saoud called Cavender to better understand Johnson's complaint.  Cavender told Saoud that scheduling was done by seniority and indicated that Johnson had a restriction on weight, but not hours. *Id.* pp. 37-38.  Saoud called Johnson back and arranged a meeting.  Johnson did not attend the meeting as scheduled. *Id.* p. 46; Johnson dep. p. 90.

Prior to the meeting, Sauod attempted to verify Johnson's seniority status since it was relevant for the scheduling of CT Technician shifts.  Saoud dep. p. 39.  She researched Johnson's record in PeopleSoft, Henry Ford's payroll system, and discovered that Johnson had previously worked at HF Wyandotte and was fired for attendance problems. *Id.* p. 51.  When Saoud brought this information to Cavender's knowledge, Cavender said he would never have hired Johnson had he known.[1]  *Id.* p. 52.  Saoud pulled Johnson's original application to validate whether she had indicated on the application if she ever worked at a Henry Ford Health System facility and saw that Johnson had answered "No" to that question. *Id.* p. 57. Giving Johnson the benefit of the doubt, Saoud pulled Johnson's HF

---

[1] Johnson testified, however, that Cavender had confronted her about her prior employment at a Henry Ford Health facility.  Johnson told Cavender that she did not remember working there but did not believe her.  Cavender then showed Johnson a "printout" demonstrating her prior employment.  He told her "he could fire [her] for that" and that he would be watching her.  Johnson dep. pp. 149-50.  Cavender denies this conversation ever took place and denies he had any knowledge of Johnson's earlier employment before being informed of it by Saoud.  Cavender dep. pp. 47-49.

6

Wyandotte application thinking perhaps Johnson did not know HF Wyandotte was a Henry Ford Health System facility. Saoud reviewed the application, which clearly stated "Henry Ford" and concluded that Johnson had falsified the application. *Id.* According to Saoud, Henry Ford maintains a policy and practice of terminating employees whom it learns provided false information on an employment application. *Id.* p. 53-54. Indeed, falsifying an application is *automatic* grounds for discharge. *Id.*

Sauod communicated her findings and conclusions to Mike Davis, Manager of Radiology, and Cavender's supervisor. Davis determined that Johnson had falsified her application, was dishonest, and terminated Johnson on that ground. Sauod dep. p. 61; Johnson dep. p. 179. Cavender himself did not make the decision to fire Johnson, nor did he have any input in the decision or contact Johnson about the decision. Cavender dep. pp. 71-72, 74-75. The decision was Davis's. Saoud dep. p. 61.

## PROCEDURAL HISTORY

Johnson originally filed her complaint in the Wayne County Circuit Court alleging that Henry Ford discriminated against her in violation of federal and state law. On March 13, 2009, Henry Ford timely removed the case to this Court pursuant to 28 U.S.C. § 1441 and the Court's original jurisdiction over claims involving a federal question, 28 U.S.C. § 1331. Removal was proper because the Court has original jurisdiction over Johnson's Title VII claim and supplemental jurisdiction over her state law discrimination claim. 28 U.S.C. §§ 1331, 1367.

Upon stipulation of the parties and order of the Court, Johnson was granted leave to file an amended complaint. In her amended complaint, Johnson added one count of violation of her rights under the FMLA. On November 24, 2009, Henry Ford moved for summary judgment on all three of Johnson's claims. The Court held a hearing on the

7

motion on January 26, 2010. At the close of the hearing, the Court took the motion under advisement.

**DISCUSSION**

I. <u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citation omitted).

The moving party has the burden of demonstrating that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992). A fact is "material" if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there

is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

In opposing a motion for summary judgment, the nonmoving party must do more than raise some doubt as to the existence of a fact; it must produce evidence that would be sufficient to require submission of the issue to a jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

II. Analysis

    A.  Discrimination Claims

Johnson claims Henry Ford discriminated against her on the basis of her pregnancy in violation of 42 U.S.C. § 2000e-2(a)(1) and Mich. Comp. Laws § 37.2202(1)(a). These statutes prohibit an employer from discriminating against an employee because of the employee's sex. Discrimination on the basis of sex includes discrimination on the basis of pregnancy. 42 U.S.C. § 2000e(k); Mich. Comp. Laws § 37.2201(d); *see also Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000) ("Thus, a claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII.") (internal quotation and citation omitted). Claims brought under both statutes are generally analyzed using the same analytical framework, and Michigan courts follow federal civil rights case law to interpret them. *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003); *see, e.g., Lulaj v. Wackenhut, Corp.*, 512 F.3d 760, 765 n.1 (6th Cir. 2008) (considering federal law in analyzing pregnancy discrimination claim brought under Michigan statute); *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 666 N.W.2d 186, 192-95 (2003).

In the absence of any direct evidence of discrimination, to defeat summary judgment,

a plaintiff may make a showing of discrimination by circumstantial evidence using the approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1979). *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000); *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462 (2001). Under this approach, a plaintiff must first establish a prima facie case of discrimination. *Johnson*, 215 F.3d at 572. If the plaintiff is able to do so, a mandatory presumption of discrimination arises and the burden of production -- but not of persuasion -- shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* at 572-73. If the defendant meets its burden of production, the burden shifts back to the plaintiff to demonstrate that the proffered reason is merely a pretext for unlawful discrimination. *Id.* at 573. The plaintiff must come forward with evidence that the defendant's reason for the employment action is false, but need not present *independent* evidence that the proffered reason is a pretext. A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* allow the jury to conclude the employer unlawfully discriminated, which would preclude summary judgment. *Sutherland*, 344 F.3d at 615; *Town v. Mich. Bell Telephone Co.*, 455 Mich. 688, 698 (1997).

Since there is no direct evidence of discrimination in this case, Johnson must begin her opposition to summary judgment by establishing a prima facie case of discrimination. Henry Ford concedes, for purposes of this motion only, that Johnson can establish a prima facie case of discrimination. Def. Mot. p. 12 n.7. Henry Ford then assumes the burden of establishing a legitimate, nondiscriminatory basis for firing Johnson. Henry Ford claims it fired Johnson for her failure to disclose her 1999 employment with HF Wyandotte on her 2005 Henry Ford application. Providing false information on an employment application provides legitimate, nondiscriminatory grounds for termination for purposes of satisfying the

defendant's burden of production. *See, e.g., Fullman v. Potter*, 480 F. Supp. 2d 782, 791-92 (E.D. Pa. 2007) (lying on employment application is legitimate reason for termination); *Marchoni v. Bd. of Ed. of City of Chicago*, 341 F. Supp. 2d 1036, 1047 (N.D. Ill. 2004) (false answer on teaching certification application provided legitimate, nondiscriminatory grounds for termination).

Furthermore, the 2005 application explicitly warned the applicant that a failure to provide true and accurate information would be grounds for later termination. Def. Mot. Ex. G. Johnson also testified she understood that she could be terminated for failing to provide true information on her application. Johnson dep. p. 63. Finally, Henry Ford has a policy and practice of terminating those employees whom it later learns provided false information on their applications. Saoud dep. pp. 53-54. Henry Ford has met its burden of articulating a legitimate and nondiscriminatory reason for firing Johnson.

Since Henry Ford has satisfied its burden of production, the burden shifts to Johnson to produce sufficient evidence from which a jury could reasonably find the employer's proffered reason was a pretext for discrimination. Pretext can be established by showing the defendant's reason: 1) had no basis in fact; 2) did not actually motivate the decision to terminate; or 3) was insufficient to warrant the decision to terminate. *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502 (6th Cir. 2007). Johnson attempts to demonstrate pretext in a couple of these ways.

First, Johnson argues that Henry Ford's proffered reason for firing her had no basis in fact. *See id.* at 502. She argues she did not lie on the 2005 Henry Ford application. She claims HF Wyandotte is not a "Henry Ford Health System" facility such that her failure to check the "yes" box to the question "Have you ever worked at Henry Ford Health System?" was not a lie. Johnson claims that Henry Ford conducts business under a variety

of different entities registered with the State of Michigan, none of which include "Henry Ford Wyandotte Hospital." Johnson's argument does not persuade; the argument does not demonstrate that Henry Ford's proffered reason had no basis in fact. The Henry Ford Health System name and logo appeared numerous times on every document Johnson signed in relation to her employment applications in 1999 and 2005. Moreover, Johnson does not challenge Henry Ford's position that the information on her application was false, but rather claims she forgot she previously worked for HF Wyandotte. Johnson dep. pp. 50-51. Johnson's failure to remember her prior employment, however, does not make her representation on the application any less false. In any event, Johnson's failure to identify her employment at HF Wyandotte in the "Employment History" was an unequivocally false representation in and of itself, and had absolutely nothing to do with the corporate structure of Henry Ford Health System Johnson claims complicates the issue.

Johnson has presented no evidence that an innocent mistake on an application, like the one she claims she made, has ever been excused by Henry Ford. The absence of any such evidence, considered together with the evidence in the record that Henry Ford's policy on such matters, prevents Johnson from creating a factual issue regarding pretext.

Johnson also argues that her incorrect answer on her application did not actually motivate the decision to fire her. *Abdulnour*, 502 F.3d at 502. The only evidence Johnson offers for this argument is her own testimony that Cavender knew of Johnson's prior employment, chose not to fire her at the time he discovered it, but later fired her when she was pregnant. Since Cavender did not fire Johnson when he learned of her prior employment with HF Wyandotte, Johnson argues, a jury could find that the decision to fire her was motivated by her pregnancy. This argument fails because even assuming that Cavender was aware of Johnson's earlier employment and did nothing, Cavender was not

12

the Henry Ford official responsible for firing her.[2] Mike Davis made the decision to, and did in fact, fire Johnson when he learned she falsified her employment application. There is simply no evidence that Davis's decision to fire Johnson was motivated, even in part, by her pregnancy. Rather, the uncontroverted evidence is that as soon as Davis learned of the false information on the application, he decided to fire Johnson. Saoud dep. p. 61.[3]

In summary, there is no evidence from which a reasonable jury could conclude that Henry Ford fired Johnson because it harbored any discriminatory animus, and not because she provided false information on her employment application. Accordingly, Henry Ford is entitled to summary judgment on Johnson's federal and state discrimination claims.

B. FMLA Claims

Johnson claims Henry Ford violated her rights under the FMLA. The Sixth Circuit recognizes two theories of recovery under the FMLA. An employee who takes FMLA leave

---

[2] Even if Cavender did have the conversation with Johnson, participated in, and was responsible in part for, firing her, his decision not to fire her at the time would have been justified by Henry Ford's policy. Johnson testified that Cavender told her he was aware she had worked at HF Wyandotte in 1999. Importantly, Johnson testified that Cavender did *not* tell Johnson he was aware that she had falsified her application or that she had been fired from HF Wyandotte. Johnson dep. pp. 149-50. Prior employment at another Henry Ford Health System facility is not grounds for automatic nondiscriminatory termination. Additionally, termination from a prior Henry Ford Health System facility is not grounds for automatic termination. A supervisor could choose to retain the employee in those situations. *Omitting* prior employment with another Henry Ford Health System facility from a subsequent application, however, *is* grounds for automatic termination. Saoud dep. pp. 53-54.

[3] Henry Ford admitted at the hearing on the motion that Davis knew Johnson was pregnant when he decided to fire her. Davis's mere knowledge of Johnson's pregnancy, without more, however, is not sufficient evidence from which a jury could reasonably reject Henry Ford's explanation and infer that it intentionally discriminated against Johnson. *See Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). If the employer's mere knowledge was enough to raise an issue of pretext, the third step of the *McDonnell Douglas* burden-shifting approach would, in many cases, be rendered a nullity, as most employers are at least aware of the qualifying medical condition of their employees.

13

may recover from her employer if the employer (1) denies the employee his or her FMLA rights (29 U.S.C. § 2615(a)(1)), or (2) retaliates or discriminates against the employee for exercising those rights (29 U.S.C. § 2615(a)(2)). *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007). Here, Johnson claims Henry Ford both interfered with her FMLA rights and retaliated against her for exercising or attempting to exercise her rights. Henry Ford is entitled to summary judgment on both theories of recovery.

    1. Interference Claim

Johnson claims Henry Ford interfered with her FMLA rights by firing her. First Amend. Comp. ¶ 63. The FMLA prohibits an employer from, "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under th[e] [FMLA]." 29 U.S.C. § 2615(a)(1). To establish an FMLA interference claim, a plaintiff must establish that: 1) the plaintiff is an eligible employee; 2) the defendant was an employer under the FMLA; 3) plaintiff was entitled to leave under the FMLA; 4) the plaintiff gave notice of her intention to take leave under the FMLA; and 5) the defendant denied the plaintiff FMLA benefits. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

Here, Henry Ford argues that it did not interfere with any of Johnson's FMLA rights because it granted every request she made. The record indicates Johnson submitted one request in May 2007. Def. Mot. Ex. J. Two separate medical certifications were submitted in support of that request. *Id.*; Def. Mot. Ex. K. The second certification indicated intermittent leave was no longer required. Henry Ford granted this request and gave Johnson time off from work. Johnson testified she does not recall whether she ever formally submitted a second request for leave under the FMLA. Johnson dep. pp. 223-24. She further testified that no one from Henry Ford ever told her they were denying any request for FMLA she had made. *Id.* p. 225. If Johnson cannot even recall whether she

submitted a second request, a jury would surely have no basis for concluding that Johnson more likely than not submitted a request. Without evidence that Johnson gave notice of her intention to take leave under the FMLA, Johnson cannot establish a case for FMLA interference.

Johnson claims she did in fact provide notice of an intent to take leave even though she did not submit a request form. She argues that she scheduled an appointment with Saoud to discuss work accommodations and that such accommodations would reasonably include another FMLA leave. Johnson contends therefore that her request for a meeting was sufficient to establish she requested FMLA leave. Pl. Resp. Br. p. 14. The Court disagrees. "To invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Walton*, 424 F.3d at 486 (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Id.* (internal quotation omitted). Johnson testified she requested a meeting because she wanted to discuss Cavender's failure to accommodate her with a more favorable work schedule. Johnson dep. p. 90. There is no reason, however, that Henry Ford should have anticipated that Johnson was going to make another request for FMLA leave in the near future. Henry Ford was aware only that Johnson had a weight lifting restriction, not a restriction on the hours she could work while pregnant. *See* Return to Work Letter of June 26, 2007, Def. Mot. Ex. L. The fact that Johnson regularly requested and was granted overtime during the same period further demonstrates that Henry Ford was unaware of any impending request for FMLA leave. Johnson dep. pp. 163-64. No jury could reasonably construe Johnson's request for a meeting with Saoud as reasonable notice to Henry Ford of a request for FMLA leave.

Accordingly, Johnson cannot create a genuine issue of material fact with respect to the notice element of her FMLA interference claim.

Even assuming Johnson could establish she gave notice of her intent to take a second FMLA leave, such that Henry Ford was aware of a request, Johnson cannot demonstrate that Henry Ford interfered with her rights because Henry Ford would have fired her regardless of her request and leave. Generally, an employee exercising FMLA rights has no greater protection against termination for non-FMLA reasons than he or she did before exercising those rights. 29 U.S.C. § 2614(a)(3)(B); *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). Therefore, "an employee lawfully may be dismissed, preventing [her] from exercising [her] statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban*, 345 F.3d at 401. It is Henry Ford's policy to terminate employees who submit false information on an employment application. A supervisor has no discretion to excuse such conduct and to retain the employee. Saoud dep. p. 53. Thus, even had Johnson submitted a second request and taken FMLA leave, she would have been fired anyway for falsifying her application. Johnson has provided no evidence demonstrating that Henry Ford failed or refused to follow this policy. Without any evidence, a jury would be compelled to conclude Henry Ford would have fired Johnson regardless of whether she requested, and was later granted, FMLA leave. Accordingly, Johnson cannot demonstrate the existence of a genuine issue of material fact as to whether Henry Ford wrongfully interfered with her FMLA rights. Henry Ford is therefore entitled to judgment on Johnson's FMLA interference claim.

2. Retaliation Claim

Johnson also claims that Henry Ford fired her in retaliation for exercising or attempting to exercise her FMLA rights. First Amend. Compl. ¶ 69. An employer is prohibited from discriminating against an employee for using FMLA leave, nor can an employer use the taking of FMLA leave as a negative factor in employment actions. *Arban*, 345 F.3d at 403; 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220 (c). This prohibition includes retaliatory termination for taking or requesting FMLA leave. *Arban*, 345 F.3d at 403.

An FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See also Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). To establish a prima facie case of FMLA retaliation, the plaintiff must establish that: 1) she engaged in an activity protected by the FMLA; 2) that the exercise of her protected rights was known to the defendant; 3) that defendant thereafter took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the employment action. *Arban*, 345 F.3d at 404.

Johnson cannot establish a prima facie case of retaliation because she cannot show that she engaged in any protected activity under the FMLA.[4] Johnson alleges in her complaint at paragraph 65 that she requested FMLA leave in order to deal with her pregnancy. Johnson, however, has produced no evidence she actually made this request. As stated above, in the Court's discussion of Johnson's FMLA interference claim, Johnson testified that she could not recall whether she ever formally submitted a second request for

---

[4] To be sure, Johnson did engaged in protected activity when she requested FMLA leave the first time, when Cavender suggested she take leave. Henry Ford granted this request and Johnson does not claim otherwise. This first request is not the basis of her instant claim for FMLA retaliation.

leave under the FMLA, Johnson dep. pp. 223-24, and there can accordingly be no jury finding that such a request was made and rejected. Additionally, Henry Ford never told her they were denying *any* request she made, *id.* at 225, and there is on this basis no way for a jury to conclude that an FMLA request was rejected.

Assuming then that Johnson would testify at trial that she did in fact submit a second request, such that she has demonstrated a prima facie case of retaliation, the burden of production would shift to Henry Ford to justify her termination and firing with a legitimate and non-retaliatory reason. *See Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). As discussed above, Henry Ford does offer such a reason: that Johnson falsified her employment application by failing to indicate that she had worked for HF Wyandotte, a Henry Ford Health System facility, in 1999. Again, this is sufficient to carry Henry Ford's burden. The burden shifts back to Johnson to demonstrate that Henry Ford's legitimate and nondiscriminatory reason is a pretext for unlawful discrimination, and in the view of the Court, Johnson has not carried her burden of showing a genuine issue of material fact as to pretext. At best, Johnson has demonstrated a temporal proximity between her second request and termination. This proximity, in and of itself, however, is insufficient to support a finding of pretext. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001). In sum, Johnson has not met her burden of establishing a genuine issue of material fact that Henry Ford's reason for discharging her was pretextual. Henry Ford is therefore entitled to summary judgment on Johnson's FMLA retaliation claim.

## CONCLUSION AND ORDER

For the reasons stated above, the Court will grant summary judgment in favor of Henry Ford on all of Johnson's claims.

**WHEREFORE**, it is hereby **ORDERED** that Henry Ford's motion for summary

judgment (docket no. 16) is **GRANTED** and judgment will be entered in favor of Henry Ford.

**SO ORDERED.**

s/Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: February 9, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 9, 2010, by electronic and/or ordinary mail.

Alissa Greer  
Case Manager